**DAHLEN v. HINES, Director General of Railroads.**

(District Court, E. D. Wisconsin. August 11, 1920.)

No. 960.

Master and servant ☞243(11) —Contributing negligence imputable to workman disobeying safety rule.

A railroad employé, injured while working about cars standing on a track, which were struck by moving cars, *held* chargeable with contributory negligence in failing to obey a rule of the company, familiar to him and which he fully understood to be applicable in the circumstances, requiring him to put out a blue flag signal to warn those moving cars to keep off such track.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At Law. Action by Edward Dahlen against Walker D. Hines, Director General of Railroads. On motion of plaintiff for new trial. Denied.

Henry Mahoney and Irving Fish, both of Milwaukee, Wis., for plaintiff.

H. J. Killilea and C. H. Van Alstine, both of Milwaukee, Wis., for defendant.

GEIGER, District Judge. I think there are two matters to be considered, on the motion for a new trial:

(1) The terms and effectiveness of rule 26; and, if interpreted as binding on the plaintiff, the effect of his failure to observe it.

(2) Whether, if his failure to observe such rule is contributory negligence, there was anything for the jury in this case to consider.

In dealing with the terms of the rule, the outstanding fact in the case is that the plaintiff himself understood it to mean just what it says; that is, the rule had been long in use by railroads, and when it was promulgated by the defendant, and the plaintiff's attention called thereto, he had no misgiving as to its meaning, nor in the slightest degree as to its application to just such situation in which he was at the time of his injury. Indeed, his contentions respecting orders not to observe the rule on outgoing trains—assuming that such orders may have been attempted to be given by the foreman, Jendusa—necessarily imply that, except for such attempted orders or directions, the rule would be conceived to be plainly applicable to the plaintiff and the work he was doing. It therefore seems quite aside from anything pertinent to the case to consider the terms and effectiveness of the rule, or whether it was or is doubtful or ambiguous, making resort to circumstances under which it was applied as an aid to interpretation.

So, when it is suggested by counsel that "the defendant had not prescribed by rule the circumstances under which the blue flag was to be put out, but had left that to the oral direction of their foreman," it is a sufficient reply to say that the rule on its face discloses the circumstance, and the plaintiff so apprehended it; and this leads us to reiterate the observation, made upon the trial, that the rule discloses what in effect is an abdication by the company, to its workmen, of its and its train operatives' power over train movements, whenever such workmen are under or about cars. It places in the hands of the latter the means of challenging and superseding the authority and power ordinarily possessed by train operatives, to initiate a train movement on a track occupied by cars under or about which there are workmen; and no matter what the emergency, the category established by the rule is a broad one, leaving it solely to the operatives to use the instrumentality of the blue flag, and to make its use effective until removed by themselves. If the rule does not mean this, it does not mean anything, and its consideration by courts, which has led to a recognition of that meaning, has certainly been gravely mistaken.

It is idle, upon the testimony of this case, to consider whether the rule, effective upon plain reading, as above indicated, was abrogated or abandoned upon either the express direction of any one having au-

thority to bind the defendant company, or upon assent—by like authority—to be presumed from incessant or long-continued failure to observe it. The testimony is wholly to the contrary. This conclusion involves the further consideration that Jendusa was under the duty of observing, and not violating or directing the violation of the rule. It was not within his competency, upon any consideration, to direct nonobservance of the rule, and, if he did so, the consequences were for himself, and those acting upon his directions, to hazard and to bear at their peril. If such cannot be the conclusion, it is, of course, useless for carriers to make, or attempt to enforce, rules.

If, therefore, the rule be thus interpreted, and as such be capable, as it is, of attaining the objective, it cannot be that it carries with it the implication of a right to violate it, upon the hypothesis that the carrier will use ordinary care; that is, the rule not only gives to the workmen under cars the power, but imposes upon them the duty, of preventing train movements upon the track where the cars are thus standing. That power, and the duty to exercise it, is vested, not for the purpose of preventing train movements which might result in "violent bumps," but all train movements. It is framed to preclude the possibility of workmen's speculatively hazarding their refusal to invoke it as against either the ordinary or negligent conduct of train movements against the cars under which they are working; and it may be observed that the plaintiff's own testimony discloses that in this very case he had an entire consciousness—because he says that once or twice, while between the cars, he looked for the approach of the additional cars which he knew must, sooner or later, come in the make-up of the train—a precise consciousness of the imminence of a danger comprehended, and to be avoided in the manner prescribed, by the rule.

But, granting that an issue might nevertheless be framed, which would permit a jury to consider both the contributory negligence of the plaintiff and negligence of the defendant, I am satisfied to adhere to the disposition made of this case because of the quality of the evidence on the issue of the defendant's negligence. The plaintiff, for some reason, introduced the rule as a part of his case, and, as I supposed, intended to rest upon the theory that the defendant had made inadequate provision by such rule for the safety of employés circumstanced as was the plaintiff at the time of his injury. Possibly there was involved the ordinary notion of making a train movement without adequate warning or safeguard to employés whom the defendant with reason should expect to be in a place of danger. But upon the issue of negligence in the train operation the plaintiff introduced testimony respecting the violence of the impact. Upon disposing of the motion, reference was made to the character of this testimony, and I have not changed my views.

Certain facts respecting the train movement are not, and cannot be, contradicted. They are not, and could not be, within the cognizance of those who, like the policeman, presumed to estimate the rate of speed. These facts deal with the stopping of the train shortly before making the attempted coupling. They are testified to by operatives who explain in detail the whole train movement, and, in my judgment,

so fully negative the mere suggestion of developing almost instantly thereafter a rate of speed of 15 miles an hour, within the short distance to be made, as to leave the testimony of the policeman and of another witness, respecting the rate of speed, in the realm of mere guesswork. There is no suggestion that any such rate of speed was maintained after the first impact, and upon the testimony, even assuming that there was negligence, its force and effectiveness at the time of the second impact, as a result of which the plaintiff claims to have been injured, rest wholly in conjecture.

The motion for a new trial will be denied, and an order will be entered accordingly.